**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

FRANCONIA ASSOCIATES,
a Limited Partnership, et al.,

Plaintiffs,

**Case Nos. 97-381C & 97-3814C**
**Judge Francis M. Allegra**

v.

THE UNITED STATES

Defendant.

**REPLY BRIEF IN SUPPORT OF PLAINTIFF FOX RIDGE II'S MOTION TO SUPPLEMENT RECORD**

**INTRODUCTION**

Plaintiff Fox Ridge Phase II ("Fox Ridge II") (plaintiff no. 4), filed a motion to supplement the record (hereinafter "Pl. Mot.") in response to this Court's order disallowing damages for Fox Ridge II, finding insufficient proof of the partnership's financial ability to prepay its FmHA mortgage. *See Franconia Assocs. v. United States*, 61 Fed.Cl. 718 (Aug. 30, 2004) ("Order" or "Slip Op."). Defendant United States raised for the first time in its response the argument that Plaintiff did not demonstrate an ability to prepay. *See* Defendant's Opposition To Plaintiff Fox Ridge II's Motion To Supplement Record (hereinafter "Def. Brief").

Fox Ridge II presented evidence at trial, in the form of testimony from a partner, contemporaneous documents, and expert testimony, that directly supports the conclusion that Fox Ridge II was able and planned to prepay the FmHA mortgage. The government has never sought dismissal of Fox Ridge II's claim on the grounds that the partnership lacked the ability to prepay its FmHA mortgage – and in fact never challenged the evidence that Plaintiff would have

prepaid its mortgage if permitted to do so – until the Order from this Court was published. Permitting supplemental evidence is entirely within this Court's discretion, and using that discretion is warranted in order to confirm whether Plaintiff could in fact have prepaid its mortgage if allowed by the government.

Plaintiff Fox Ridge II respectfully requests leave to supplement the record in order to admit information regarding its financial ability to prepay the FmHA mortgage; or, in the alternative, the Court should conclude that the evidence presented at trial was sufficient to determine that Plaintiff had the ability to prepay its mortgage and thus suffered damages as a result of the government's breach of contract.

**A. Unchallenged Affirmative Evidence Of Intent And Ability To Prepay Was Presented At Trial.**

Fox Ridge II presented affirmative testimonial evidence of Plaintiff's intent and ability to prepay at trial, a fact which garners zero attention in Defendant's Brief. Mr. Ronald Powers, a partner of Fox Ridge Phase II L.P.,[1] appeared on behalf of the partnership at the trial of this matter held during June 2003 in Des Moines, Iowa. At trial, Mr. Powers testified that he attempted to prepay the FmHA mortgage for Fox Ridge II, without restriction, in 1992 with the intent to shift to a conventional type property. (V/1167) As stated at trial, Mr. Powers was ready and willing to prepay the mortgage. (V/1167-68) The FmHA representative told Mr. Powers that his request was out of the question, and Mr. Baker dropped the matter. *Id*. Again, in 1998, Mr. Powers informed the agency (this time in writing) that the partnership was capable of prepaying its USDA loan, at then present interest rates, with a conventional loan. (PX 690)

[1] Mr. Powers also was a partner in Plaintiff Dublin Plaza, the case that was dismissed due to the statute of limitations. (Slip Op. at 41 n.56)

The expert testimony presented at trial further demonstrates that Fox Ridge II's ability to prepay the mortgage was more likely than not since prepayment was essential to a successful business plan. Dr. Karvel established that none of the Plaintiffs would be able even to recoup their initial investment in the properties absent the ability to prepay their FmHA mortgage. (I/352); *See also* (VII/1559) ("With the owners that I've met, and I believe that I've met with all of them for each of the 37 subject properties, the only thing I've heard consistently from them is that they want to prepay.") In short, Dr. Karvel's economic analysis revealed that "[the property is] worth more than you paid for it if you had a market rent property, and it's worth less than you paid for it if you have a restricted rent property." (II/494) This evidence was not challenged at trial by the government, nor was it challenged in post-trial briefs.[2]

Since Fox Ridge II's assertions and documents regarding its ability to prepay the mortgage were not challenged, there was little reason to delay proceedings to belabor the point. Without a challenge to the presented evidence, either explicitly or implicitly, the presentation of further evidence would have been duplicative and was not warranted. Indeed, Federal Rule of Evidence 403 expressly provides for the exclusion of relevant evidence if its probative value is substantially outweighed by "…considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Where the sufficiency of certain proof ultimately is questioned, however, additional relevant evidence *cannot* be excluded by Rule 403. Here, Fox Ridge II was not put on notice that the sufficiency of its proffered evidence would be challenged until the Court acted on its own initiative prior to final judgment. Under the circumstances, and given that the partnership's trial evidence of its ability to prepay was undisputed by the

[2] In fact, the government first asserts that Fox Ridge II has not proved its capacity to prepay the mortgage in response to Plaintiff Fox Ridge II's Motion To Supplement The Record.

government, Plaintiff submits that it would be fair and proper for the Court to consider additional, clarifying evidence by giving the Plaintiff the opportunity to respond.[3]

**B. This Case Presents Similar Facts As *Gibson*.**

The Third Circuit has ruled that a court may reopen the record and admit new evidence in circumstances that greatly mirrors Plaintiff's situation. *Gibson v. Mayor & Council of the City of Wilmington*, 355 F.3d 215, 229 (3rd Cir. 2003). In *Gibson*, the trial record was closed. *Id*. The evidence that was admitted was consistent, alternative proof of evidence addressed at trial. Similarly, a final judgment also was not entered before the court permitted additional evidence to be admitted. Perhaps most significantly, the issue at point was not disputed until after the record was closed.[4] The Third Circuit held the trial court did not abuse its discretion by admitting the evidence. This holding is consistent with common judicial practice of allowing a party to respond to an opponent's arguments in order to reach a fair decision based on all the relevant evidence.

---

[3] For example, when a court grants summary judgment *sua sponte*, notice is typically given to the party adversely affected so that a response may be offered. *Armour v. County of Beaver*, 271 F.3d 417, 434 (3rd Cir. 2001); *Massey v. Congress Life Ins. Co.*, 116 F.3d 1414 (11th Cir. 1994) (holding that district court's failure to give sufficient notice that it might grant summary judgment precluded summary judgment for breach of contract claim); *Hanson v. Polk County Land, Inc.*, 608 F.2d 129, 131 (5th Cir. 1979) (finding reversible error in trial court's grant of summary judgment sua sponte without proper notice). Similarly, *sua sponte* dismissal for failure to state a claim also requires notice and an opportunity to respond. *Futura Dev. of Puerto Rico, Inc. v. Estado Libre Asociado de Puerto Rico*, 144 F.3d 7 (1st Cir. 1998). For the same reasons, when a court uses its inherent power to issue sanctions *sua sponte*, the court should provide notice and afford the party time to respond. *See Goldin v. Bartholow*, 166 F.3d 710 (5th Cir. 1999); *Moates v. Barkley*, 147 F.3d 207 (2nd Cir. 1998) (per curiam); *Johnson v. Waddell & Reed, Inc.*, 74 F.3d 147 (7th Cir. 1996).

[4] In *Gibson*, a police officer claiming wrongful termination in a § 1983 suit challenged his ability to hear the underlying conversation during closing arguments. *Gibson*, 355 F.3d at 219. The argument consisted of an assertion that the audio (as presented by a video tape showing the audio tapes being played at a disciplinary hearing) was of such poor quality that actual collusion with job deception was not possible. *Id*. The terminated officer challenged the admission of the evidence, arguing that the court was permitting the adverse party to circumvent the arguments based on the record as presented. *Id*. The Third Circuit was not persuaded by this argument. *Id*.

In this case, the trial record is closed, but a final judgment has not been entered. The issue in dispute, Fox Ridge II's ability to prepay the FmHA mortgage, was not disputed until after each side had rested its case. The evidence that Fox Ridge II seeks to admit is entirely consistent with the evidence and arguments presented at trial. Contrary to Defendant's Brief, the supplemental evidence provides a clearer and more detailed picture of Fox Ridge II's ability to prepay its FmHA mortgage. (*See* Def. Brief at 3) ("Fox Ridge does not seek to offer the trier of fact a clearer version of evidence already in the record"). The record supports the Plaintiff's trial testimony, and provides more detail about the several options the partnership could have pursued if permitted by law to prepay without restrictions. Defendant's differentiation of *Gibson* relies on the faulty premise that no evidence has been produced on the issue of Fox Ridge II's ability to prepay the FmHA mortgage. Considering the aforementioned trial testimony of Mr. Powers, as a partner of Plaintiff Fox Ridge II, the expert testimony regarding prepayment as an economic necessity, and the contemporaneous documents indicating that the partnership sought action on a prepayment application, Defendant's attempt to distinguish *Gibson* fails.

The fact is that the profound gap in the evidence regarding the partnership's desire and ability to prepay lies on the government's side. Although the burden of persuasion rests with the Plaintiff on any given issue, at some point the Defendant's failure to produce evidence on its own behalf, or failure even to challenge the assertion, becomes noteworthy.[5] This fact takes on

[5] *See, e.g., Sabatino v. Curtiss Nat'l Bank of Miami Springs*, 446 F.2d 1046, 1055 (5th Cir. 1971) (although the burden of proof never shifts, when a party having the burden of proof makes a prima facie case, the opposing party is required to "come forward with some evidence to rebut that prima facie case"); *Willingham v. Secretary of Health, Ed. & Welfare*, 377 F. Supp. 1254, 1257 (S.D. Fla. 1974) ("It is said that although a plaintiff always has the burden of persuasion, which never shifts, he may produce sufficient evidence that his opponent's failure to adduce contradictory proof either may lead to a decision for plaintiff, or must lead to such a ruling.").

added importance when the government first raised the argument not at trial, or even in Defendant's post-trial briefs, but in response to Plaintiff's Motion to Supplement.

**C. The Motion To Supplement Record Is Solidly Within This Court's Discretion And Should Be Granted.**

The case law is clear that a trial court has the discretion to admit supplemental evidence. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 331 (1971). As with most uses of a court's discretion, equitable concerns dominate the analysis. *See e.g., Gibson v. Mayor & Council of the City of Wilmington*, 355 F.3d 215, 229 (3rd Cir. 2003); *Smith v. Rogers Galvanizing Co.*, 148 F.3d 1196, 1198 (10th Cir. 1998) ("Ultimately, 'fairness is the key criterion in determining whether to reopen.'") (citing *Blinzler v. Marriott Int'l, Inc.*, 81 F.3d 1160 (1st Cir. 1996)).[6] When considering equitable issues, an exploration of the factual context and history becomes necessary as legal standards are applied.

**1. Defendant Cites Nothing That Contradicts The Standard Of Fundamental Fairness.**

The only Federal Circuit case cited by Defendant stands for the proposition that a trial court does not abuse its discretion in denying a motion to reopen the record and admit new evidence when the new evidence allegedly contradicts the adversary's evidence, no explanation is offered for not producing it earlier, and the issue in question is essentially moot. *Enzo Biochem, Inc. v. Calgene, Inc.*, 188 F.3d 1362 (Fed. Cir. 1999). The government also cites cases from other circuits which stand merely for the unremarkable proposition that a court has

[6] Defendant minimizes the equitable concerns and focuses on one possible factor a court may consider in deciding whether to reopen and submit additional evidence, specifically the reason for not producing the evidence earlier. Contrary to Defendant's claim, Plaintiff Fox Ridge II's motion is dedicated to discussing why the documents were not produced and why this Court should admit the supplemental evidence. (*See* Pl. Mot.) In sum, the documents were not in the possession of the Plaintiff Fox Ridge II, nor in the possession of its individual partners, at the time of trial.

discretion to deny reopening cases, particularly where the initial failure to introduce evidence was strictly for tactical purposes.[7]

Aside from the affirmation of this Court's discretionary powers, the government has failed to accurately state the applicable legal standard for considering a motion to reopen by confusing a Rule 60 motion with a motion made under Rule 59(e), and implying that the more stringent standards of Rule 60 apply to the present case. RCFC 59(e); RCFC 60.[8] "A motion to reopen a case under Rule 59(e), though subject to much more stringent time limitations than a comparable motion under Rule 60(b), is not controlled by the same exacting substantive requirements." *Lavespere v. Niagra Mach. & Tool works, Inc.*, 910 F.2d 167, 173-174 (5th Cir. 1990), *reh'g denied*, 920 F.2d 259 (1990), *cert denied*, 510 U.S. 859 (1993). In *Lavespere*, the Fifth Circuit held that a court should consider a motion to reopen under Rule 59 since the party had challenged the summary judgment "well before the 10 days from the entry of the judgment

---

[7] (*See* Def. Brief at 3, n.3); *See also Continental Sand & Gravel, Inc. v. K & K Sand & Gravel, Inc.*, 755 F.2d 87, 92 (7th Cir. 1985) (holding trial court did not abuse its discretion for refusing to reopen plaintiff's case-in-chief and admit new evidence when court explicitly rejected trial testimony and evidence presented at trial conflicted); *Blytheville Cotton Oil Co. v. Kurn*, 155 F.2d 467, 470-1 (6th Cir. 1960) (Court did not abuse discretion for denying motion to reopen that was "equivalent to motion for a new trial"); *Armstrong v. Charlotte County Bd. of County Com'rs*, 273 F.Supp.2d 1312, 1316 n.1 (M.D. Fla. 2003) (awarding damages for plaintiff's lost benefits supported only by plaintiff's testimony, but denying motion to reopen for presentation of evidence regarding value of other lost benefits not testified to at trial); *Korea First Bank v. Lee*, 14 F.Supp.2d 530, 531 (S.D.N.Y. 1998) (denying motion to reopen when counsel deliberately chose to leave witness off list of potential witness, reopening trial would place a great burden by requiring opposing witness to return to United States from Korea, and where desired testimony would not change outcome).

[8] Defendant cites *Downey* for the proposition that it is an abuse of a court's discretion to reopen and submit evidence if the failure to admit evidence is attributable to attorney negligence or carelessness. (Def. Mot. at 3); *See also Downey v. Denton County, Texas*, 119 F.3d 381 (5th Cir. 1997) (holding trial court did not abuse its discretion by refusing to allow counsel to redesignate rebuttal witnesses as case-in-chief witnesses when counsel earlier explained tardy witness list submission as witness list for rebuttal witnesses) (citing *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 173 (5th Cir. 1990). However, the case applies legal standards to motions to reopen under Rule 60, not other rules. *Lavespere*, 910 F.2d at 172-175.

had passed." *Id*. at 175. However, neither Rule 59 nor 60 is entirely on point for Plaintiff's situation since a final judgment has not been entered by this Court. Under the Rules of the Court of Federal Claims, any order or decision of the Court "is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all parties." RCFC 54(b); *see also Mendenhall v. Barber-Greene Co.*, 26 F.3d 1573, 1582 (Fed. Cir. 1994).

**2. Fundamental Fairness Dictates Reopening The Record.**

Considering the equities, this Court should reopen the record and admit the supplemental evidence. First, the motion to reopen and supplement the record was made in a timely fashion. Indeed, the motion was made before entry of final judgment. As stated previously, courts are generally more lenient to allow supplemental evidence when offered in a timely fashion in order for courts to make conclusions based on all of the available facts. Second, the admission of the new evidence will not prejudice Defendant. The government would not be prejudiced by the admission of the supplemental evidence as indicated by its own actions. The government received similar documents for all the properties at issue in *Franconia*, and never questioned any plaintiff's ability to prepay at trial. Nor did the defendant ever question any plaintiff's ability to prepay in its post-trial briefs. There is no reason to expect that Defendant would act differently if the material had been presented at trial. This is especially true when the supplemental evidence is entirely consistent with the testimony and documents offered at trial. In fact, the supplemental evidence is consistent with all of the other plaintiffs, which serves to only emphasize the fundamental importance of the prepayment right. As a result, Defendant's own actions support reopening the record and admitting the evidence. Third, the documents were not in the possession of the Plaintiff or its agents during trial. Finally, the supplemental evidence is

material to the calculation of damages for Plaintiff. Omission of this evidence will lead to the unjust situation of identifying an injury, but denying any remedy.

**D. The Supplemental Evidence Was Held By The Bank At The Time Of Trial.**

In his declaration on behalf of Plaintiff's motion to supplement the record, Mr. Ronald Powers states that he did not have possession of the records at the time of trial. (Powers Decl. ¶ 4) Defendant argues that Ronald Powers' declaration is incompetent evidence, and cites Federal Rules of Evidence 801 and 802. (Def. Brief at 5) Contrary to Defendant's assertions, the declaration does not contain inadmissible hearsay. First, the declaration of Mr. Powers is not submitted for admission to the record. Plaintiff provides his declaration to aid the Court in ruling on the admissibility of the exhibits attached to it. Thus, labeling the declaration inadmissible is irrelevant. Indeed, Federal Rule 1101(d)(1) explicitly states that this Court is not bound by the rules of evidence regarding the determination of preliminary questions of fact, such as those relating to the qualification of a person to be a witness. Thus the government's invocation of Rules 801 and 802 is irrelevant. Finally, even if the Federal Rules of Evidence did apply to this Court's admissibility determination, the declaration's attachments satisfy the prerequisites of the business record exception to the hearsay rule. Fed. R. Evid. 803(6). As a result, this Court is not prohibited from considering Powers' declaration.

**E. The Supplemental Evidence Supports Plaintiff's Existing Evidence That It Could Prepay Its Mortgage.**

Plaintiff has located, and offered as supplemental evidence, certain financial documents including financial statements summarizing the Fox Ridge II partners' assets covering the time period of attempted prepayment. (Ex. A; Ex. B) The partnership sought to prepay the mortgage on Fox Ridge II in 1992 and explored the possibility again in 1998. (V/1167) (Mr. Powers' trial testimony of conversations with Rural Development in 1992 seeking to prepay mortgage); (PX

690) (letter to Rural Development "exploring" prepayment in 1998); (V/1167-68) (Mr. Powers' trial testimony stating he was ready and willing to prepay the mortgage in 1998).

Based on this Court's analysis in its Order dated August 30, 2004 (including its findings incorporated in the Order's Fact Appendix A regarding the specific dates of various prepayment requests) this Court determined that, although Fox Ridge II sent an August 1998 letter "exploring" the possibility of prepayment, plaintiff never actually submitted a prepayment request. (Fact Appendix A (Order at 80).) Consequently, Fox Ridge II falls into that category of properties whose owner did not file a prepayment request prior to the filing of the instant suit. (Order at 49) With regard to these properties, the Court found that the beginning point for the discounted cash flow analysis should be the date that the suit commenced, *i.e.*, May 1997. (Order at 50)

Most important of all, a fine toothed examination of the existing record regarding Fox Ridge II *does* reveal numerous indications that the owner had the capacity to prepay prior to trial. (*Cf.* Order at 39) First, the record includes an appraisal indicating that the Plaintiff's equity position in the complex was favorable. (Order at 40) Said appraisal indicates that, as of March 2001, Fox Ridge II had a market value of $1,700,000. (PX 700 at 11, 13, and 15). This value is $793,041 higher that the mortgage loan balance during May 1997, *i.e.*, $906,959 (PX 693 at 9). Second, additional existing evidence for the very year in question, *i.e.*, 1997, also indicates that the owner had the capacity to prepay. The audited Financial Statements for Fox Ridge II, as of December 31, 1997, reflect that the value of the property at cost was $1,279,558. (PX 698 at 6) This value is $372,599 higher than the mortgage loan balance during May 1997, *i.e.*, $906,959. In short, based upon *both* appraisal evidence *and* the Financial Statements admitted into evidence at trial, the partnership's equity position in the property was clearly favorable. (Order at 40)

The evidence with which Plaintiff now seeks to supplement the record simply constitutes an additional indication that the financial status of the complex or that of the owners was such as reasonably to assure prepayment. (Order at 40) The supplemental evidence shows that the partners of Fox Ridge II had a financial portfolio worth $1,523,072 in November 1998. (Powers Decl. ¶ 10; Ex. B) These records indicate that the partners were likely able to personally cover the outstanding mortgage balance of $906,959 as of May 1997. This evidence supports Mr. Powers' unchallenged trial testimony, and constitutes persuasive evidence that the partnership had substantial financial wherewithal to prepay the FmHA mortgage for Fox Ridge II. This financial information of the partners simply adds to the available options the partnership could have taken to prepay the mortgage. When one looks at the entire financial situation of the partners and the partnership, Fox Ridge II was clearly able to obtain conventional financing in many different ways.[9]

[9] Defendant fails to acknowledge that one need not liquidate property to obtain financing or that short-term encumbrances of property can be an economically wise decision.

## CONCLUSION

For the foregoing reasons, Plaintiff Fox Ridge II respectfully requests that the Court grant it leave to supplement the record and admit the additional evidence cited herein or, in the alternative, that the Court hold that the evidence of record is sufficient to support Plaintiff's claim for damages.

Respectfully submitted,

Dated: December 6, 2004

**s/Jeff H. Eckland**

**Filed Electronically**

Mark J. Blando, Of Counsel
ECKLAND & BLANDO LLP
700 Lumber Exchange
10 South Fifth Street
Minneapolis, MN 55402
Telephone: (612) 305-4440
Facsimile: (612) 305-4439